UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>RAY GILBERT,<br><br>  Defendant. | Case No. 23-cr-00444-YGR (LB)<br><br>**ORDER FOLLOWING BAIL HEARING**<br><br>Re: ECF No. 122 |

Pretrial Services charged defendant Ray Gilbert with two violations of his conditions of pretrial release: tampering with his electronic monitor on December 23, 2025, and using marijuana, demonstrated by positive drug tests on January 12, 2026, and February 12, 2026.[1] Pretrial Services and the government did not seek remand and agreed that the defendant should remain on release pending sentencing. Given that agreement, at a bail hearing on March 5, 2026, the court did not modify the terms of release but made two determinations: (1) the positive drug tests reflect actual marijuana use, and (2) it could not categorically exclude accidental breaking of the monitor (even though it seems unlikely). The next paragraphs summarize the case timeline, the alleged violations of the conditions of supervision, and the basis for the court's conclusions at the hearing.

---

[1] Form 8 – ECF No. 122. Citations refer to the Electronic Case File (ECF).

ORDER – No. 23-cr-00444-YGR (LB)

The defendant made his initial appearance in this case on August 28, 2023.[2] He remained in custody until October 24, 2024, when he was released by agreement of the parties to reside at the halfway house at 111 Taylor Street. The reason for the agreement was that by October 25, 2024, assuming a low-end guidelines sentence, any further detention likely would exceed that sentence.[3] In December 2025, the halfway house terminated the defendant after they found marijuana in his room.[4] As a result, on December 22, 2025, Magistrate Judge Donna Ryu placed him on home detention subject to electronic monitoring. As part of that process, the defendant admitted that he brought marijuana into the halfway house and to using marijuana at the time.[5]

On December 23, 2026, Pretrial Services apparently received an alert and called the defendant, who reported that the ankle monitor fell off his ankle while he was sleeping.[6] The defendant then texted a picture of the broken device to Pretrial Services at around 11:30 p.m. The next morning, he reported to Pretrial Services at 10:30 a.m. and was placed on a new electronic monitor. There have been no issues with electronic monitoring since.

Thereafter, on February 13, 2026, after sending the device for analysis to the vendor, Pretrial Services filed a Form 8 charging the defendant with violating the terms of his pretrial release by tampering with his electronic device and by testing positive for marijuana use on January 12, 2026, and February 12, 2026.[7]

The court held a hearing on the charges on March 5, 2026, the date that Pretrial Services requested. At the hearing, the court advised the plaintiff of the charges, his rights, and the potential consequences of the charges. The government and Pretrial Services did not seek remand and instead agreed that the defendant should remain on release, subject to the existing conditions. The hearing thus was to make findings about whether the alleged violations occurred. The parties

---

[2] Minute Entry – ECF No. 4.
[3] Stipulation – ECF No. 67; Conditions of Release – ECF No. 72.
[4] Form 8 – ECF No. 122.
[5] Minute Entry, ECF No. 113.
[6] Form 8, ECF No. 122.
[7] *Id.*

proceeded by proffer, which is customary in bail proceedings, and agreed that the relevant standard of proof was clear and convincing evidence.

For the marijuana tests, the laboratory confirmed that the two tests on January 12 and February 12 were positive for marijuana. On December 22, 2025, the defendant admitted that he used marijuana at that time. The January 12 positive test is consistent with that admission. Generally, marijuana stays in the system for about thirty days, but tests during the thirty days can show declining THC if someone is not using marijuana. The positive test on February 12 test suggests use sometime in the prior thirty days. The lab confirmation did not include THC levels, so the court cannot assess whether the levels of THC were declining. (One can get some data from the THC levels about the last use.) But the defendant started a new job on February 12, 2026, his employer requires him to drug test, and he has been testing clean. Pretrial Services planned to test him directly after court. These violations were essentially undisputed, and the evidence (considered under the requisite standard of proof) supports a finding of marijuana use on the charged dates.

The remaining issue is whether clear and convincing evidence supports a finding that the defendant tampered with the electronic-monitoring device. The forensic report identified scraping on the device, which the government proffered as suggesting use of a tool. The report also is equivocal, stating that breakage "can happen" with excessive force and "could be the result of scraping against another object as the damage occurred." Defense counsel proffered that the scraping could have happened in bed (by scraping against a hard object such as an iron bed frame) and suggested that this narrative is consistent with the report that the defendant was asleep, woke up only after Pretrial Services called him, and then texted a picture of the broken device at 11:30 p.m., also consistent with being asleep. Pretrial Services observed that people break electronic monitors to go places undetected.

At the hearing, the court said that — given the immediate reporting to Pretrial Services the next morning — it would have concluded in December that the defendant violated the conditions of release under the clear-and-convincing-evidence standard. (It would have continued the defendant on supervision pending the forensic evaluation of the device.) Now, given a slightly

equivocal forensic report, the court is not quite so sure that it can rule out an accident categorically: it seems possible that a hard bang might break it accidentally. (Unlikely but perhaps not impossible.) And now, almost three months later, the defendant is gainfully employed and is doing well on supervision. He has family support and looks to be on a better path. Pretrial Services and the government do not seek remand. As Pretrial Services observed at the hearing, the delay was a benefit to the defendant.

The defendant will remain on release pending sentencing.

**IT IS SO ORDERED.**

Dated: March 5, 2026

LAUREL BEELER
United States Magistrate Judge